THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NAFEZ TOTAH et al., Defendants-Appellants.

First District (5th Division)   Nos. 1—87—2477, 1—87—2817 cons.

Opinion filed December 15, 1989.—Rehearing denied January 18, 1990.

---

*Justice Pincham participated in the decision prior to his resignation.

240

Stillo, Prechter & Ettinger, Ltd., of Oaklawn, for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Michele R. McDowell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM* delivered the opinion of the court:

Defendants, Ahmad Shabeah and Nafez Totah, were each convicted of delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)). They were sentenced to respective terms of 8

---

*Justice Pincham participated in the decision prior to his retirement.

and 10 years' imprisonment and two years' mandatory supervised release. Defendants appeal, alleging that the trial court erred in failing to readmonish defendant Totah of his right to trial by a jury; that defendant Shabeah was denied his constitutional right to the effective assistant of counsel; that the State did not prove them guilty of delivery of a controlled substance beyond a reasonable doubt; and that the trial court abused its discretion in sentencing them to excessive terms of imprisonment. We affirm both judgments of conviction.

Defendant Shabeah's jury trial and defendant Totah's bench trial were held simultaneously. At the outset of the trials, counsel for defendant Shabeah requested a continuance on the grounds that an earlier scheduled legal interview conflicted with the trial and that his performance at trial could be affected by a painful spasm in his shoulder. The trial court denied counsel's request but agreed to begin jury selection after he had sought medical attention. Defendant Shabeah's counsel renewed his request for a continuance, arguing that his ability to perform during the trial could be affected by a medication, Tylenol, he had taken. The trial court again denied counsel's request but permitted him to request a recess at any time during the trial.

During the trial of defendants Shabeah and Totah, the witnesses testified that the following events occurred.

Officer Robert Slupski, a Chicago police officer, testified on behalf of the State. Officer Slupski testified that on April 24, 1986, and at 7 p.m., he went to the Speak Easy Lounge at West 63rd Street and California Avenue in Chicago, Illinois, to meet a confidential informant. At the lounge, the confidential informant introduced defendant Shabeah to Officer Slupski. Slupski inquired about purchasing an ounce of cocaine, and defendant Shabeah replied that there would be no problem obtaining the quantity requested but that it would cost Slupski $1,800. Slupski complained about the price but was assured that the cocaine was of high purity and could be "cut four times." Defendant Shabeah then went to a public telephone located five feet from Slupski and called his cocaine suppliers. The proximity of the public telephone to the table at which Officer Slupski sat allowed him to overhear defendant Shabeah's conversation. Slupski testified that defendant Shabeah spoke to defendant Totah on the telephone because he heard Shabeah mention defendant Totah's first name, Nafez, and that he also heard defendant Shabeah inform Totah that there was a person interested in purchasing an ounce of cocaine. After defendant Shabeah concluded his telephone conversation, Shabeah and Officer Slupski agreed to conclude the cocaine transaction at Bennigans Restaurant located at 95th and Ridge in Chicago, Illinois. The

meeting at Bennigans Restaurant was scheduled for 9 p.m. on the same day.

Officer Slupski exited the Speak Easy Lounge with defendant Shabeah, and waited until Shabeah drove off in a 1979 Cadillac Eldorado. As soon as Shabeah left, Officer Slupski drove off and informed Agents Douvris, Guerra and Hogue about the potential purchase of an ounce of cocaine.

Two hours later, at 9 p.m., Officer Slupski, who was now wearing a hidden electronic warning device, drove and parked directly in front of Bennigans Restaurant. When Slupski got out of his car, he saw defendant Shabeah also exiting a car. They both exchanged greetings and entered Shabeah's car. Shortly thereafter, defendant Shabeah got out of his car and went into Bennigans to make a telephone call. Shabeah returned to his car five minutes later and informed Slupski that the cocaine suppliers would be arriving shortly.

Defendant Totah and defendant Bishawi, who is not a party to this appeal, arrived in a red Ford Thunderbird and parked alongside defendant Shabeah's car. Shabeah introduced Officer Slupski to defendants Totah and Bishawi, and Shabeah and Slupski entered Totah's car. Once inside Totah's car, Shabeah reminded Totah that Slupski was interested in purchasing cocaine and he could be trusted. While defendant Totah drove them to the rear of Bennigans, Slupski informed Totah that the money for purchasing the cocaine was in his car. Defendant Bishawi questioned why Officer Slupski left the money in his car, and Shabesh responded that the money was in fact in Slupski's car and they should not worry because "he's cool." Totah stopped the car and Bishawi instructed Totah to give Officer Slupski the cocaine. Defendant Totah reached under the front floor mat of the car and pulled out a plastic bag that contained a white powdery substance. Officer Slupski asked for the price of the cocaine and Totah replied that Shabeah had already set the price of the ounce of cocaine. Slupski next inquired about purchasing larger quantities of cocaine in the future, and defendant Bishawi replied that, "once we get to know you better, we can sell you an ounce for $1600 and a kilo of cocaine for $1400 an ounce." Defendant Totah drove back to the front of Bennigans to get the money from Officer Slupski's car. Once Officer Slupski exited defendant Totah's car, he activated the hidden electronic warning device.

Officers from the Chicago Ridge police department arrived immediately and arrested defendants Shabeah, Totah, and Bishawi. Officer Slupski searched Totah's red Ford Thunderbird and found another plastic bag that contained a white powdery substance. Albert Larsen,

a chemist and forensic scientist at the Department of State Police, examined the contents in the two plastic bags and determined that the first bag contained 24.3 grams of cocaine, while the second bag contained three grams of cocaine.

Defendant Shabeah testified on his own behalf and gave a different version of the events that occurred on April 24, 1986. Defendant Shabeah testified that he had known the confidential informant for only five days prior to his arrest and that the informant left a message, requesting that they both meet at the Speak Easy Lounge on April 24, 1986. Defendant Shabeah further testified that once he got to the lounge, the informant introduced him to Officer Slupski. After the telephone conversation, Shabeah testified that he left the lounge and later met Slupski at Bennigans. Shabeah further testified that when defendants Totah and Bishawi arrived at Bennigans, they all entered Totah's car, and Slupski asked, "[W]here's the stuff?" to which defendant Totah questioned whether Slupski was a police officer. Shabeah interrupted Totah and told him that Slupski was a nice guy and a friend. Defendant Shabeah testified that as soon as he stepped out of the car, he found himself on the ground with a gun pointed to his head.

Defendant Shabeah denied ever mentioning to Officer Slupski the word "cocaine" or the words "$1,800," "purity" or that the ounce of cocaine could be "cut four times." Defendant Shabeah concedes placing the telephone call to defendant Totah, but denies discussing cocaine, suppliers or the price of the cocaine with defendant Totah. Shabeah claims that he did not speak to Totah but placed the call and gave the telephone to the informant, who then spoke to Totah. Shabeah acknowledges going to Bennigans but argues that the informant asked him to go there. Shabeah further denied ever discussing or mentioning narcotics, the price of the narcotics, or the possibility of future drug deals in defendant Totah's car.

Defendants Ahmad Shabeah and Nafez Totah were each found guilty of delivery of a controlled substance.

On July 29, 1987, a hearing in aggravation and mitigation was held for defendant Totah. The State's witness, Valdez, a special agent for the Illinois State Police, testified that, approximately one month before the hearing, on June 27, 1986, he was involved in an undercover operation to purchase narcotics. Agent Valdez further testified that during the undercover operation, he purchased 6.4 grams of cocaine from defendant Totah, who was then on bond for the offense in the case at bar. At the conclusion of Valdez's testimony, the State argued that defendant Totah deserved to be incarcerated for a signifi-

cant period of time in view of the second offense he had committed while out on bond. Defendant Totah, however, argued that he should receive the minimum sentence because he lacked a criminal background and was not a sophisticated drug dealer, but rather, was honest and had been employed all his life. Following the aggravation and mitigation hearing, defendant Totah was sentenced to 10 years' imprisonment and two years' mandatory supervised release.

On August 13, 1987, a hearing in aggravation and mitigation was also held for defendant Shabeah. During the hearing, the State again requested the maximum sentence for defendant Shabeah, arguing that he was an experienced drug dealer who had recently emigrated to the United States and had already been placed on one year's supervision for theft and found guilty of possession of marijuana. Mrs. Shabeah testified on her husband's behalf and stated that defendant Shabeah was a good husband and, if incarcerated, she would have no means to support herself and her children. Defendant Shabeah also testified that he would not have received any money for the drug transaction that took place on April 24, 1986, and if placed on probation, he would work to support his family. Following the aggravation and mitigation hearing, defendant Shabeah was sentenced to eight years' imprisonment and two years' mandatory supervised release.

Defendant Totah contends before us that the trial court erred in failing to readmonish him of his right to trial by a jury. Defendant Totah argues that after he had twice been admonished of his right to trial by a jury, he should have been admonished for at third time. Defendant Totah further argues that he waived his right to trial by a jury in anticipation of pleading guilty, and when the trial court withdrew his plea of guilty, he should have again been admonished of his right to a trial by a jury. Defendant Totah thus claims that the trial court's admonition and his subsequent waiver were only effective as to his guilty plea and were invalid and inapplicable after the trial court withdrew the guilty plea and proceeded to try him without a jury. Defendant Totah's argument is specious and without merit.

■ The Illinois Code of Criminal Procedure of 1963, section 103—6, provides that "[e]very person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court." (Ill. Rev. Stat. 1985, ch. 38, par. 103—6.) Supreme Court Rule 402(a) provides in pertinent part:

> "In hearings on pleas of guilty, there must be substantial compliance with the following:
>
> (a) The court shall not accept a plea of guilty without first, by addressing the defendant in open court, informing him of

and determining that he understands the following:

\* \* \*

(4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him." 107 Ill. 2d R. 402(a).

■ The record reveals that defendant Totah, with counsel by his side, signed a jury waiver form and was personally admonished by the trial judge of his right to be tried by a jury. The record also reveals that after the trial judge's conscientious admonition, defendant Totah replied in the affirmative when asked whether he wanted a bench trial. Shortly thereafter, defendant Totah chose to plead guilty, and he was again admonished of his right to trial by a jury and informed of the consequences of pleading guilty. Defendant Totah replied in the affirmative for the second time that he understood he would be waiving, amongst other rights, his right to trial by a jury.

Based on the foregoing, it is clear that the trial judge in open court admonished defendant Totah of his right to trial by a jury. It is also clear that the trial judge complied with the required enumerated admonitions of Supreme Court Rule 402(a) after defendant Totah pled guilty. Defendant Totah cites no authority to support his contention that the trial court's admonition, and his subsequent oral and written waiver of a jury trial, applied only to his plea of guilty and was invalid, ineffective and inapplicable to his subsequent bench trial.

Defendant Totah further contends that, even though he waived his right to trial by a jury, his waiver was not knowingly and understandingly made. We disagree.

■ There is no precise formula for determining whether a jury waiver is understandingly made; therefore, the waiver question must be resolved by the particular facts and circumstances of each case as revealed by the record as a whole. (*People v. Wesley* (1964), 30 Ill. 2d 131, 195 N.E.2d 708; *People v. Crespo* (1983), 118 Ill. App. 3d 815, 455 N.E.2d 854; *People v. Lewis* (1980), 89 Ill. App. 3d 840, 412 N.E.2d 565.) The Illinois Supreme Court has expressed the view that a trial court should accept a waiver when a defendant personally waives his right either in writing or in open court for the record. *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762.

At the outset of the trial the following exchange took place between defendant Totah and the trial court:

"THE COURT: \*\*\* Your attorney has just given me a document that's called a jury waiver. Mr. Totah, your attorney has just given me a document that's called a jury waiver. I want

you both to understand that each one of you has a right to a jury trial. A jury trial takes place when twelve people are selected by the parties as you saw regarding your co-defendant, selected by the parties, they're sworn in, they hear the evidence and they make the determination of questions of fact including the question of guilty or not guilty.

By signing this jury waiver, that means you want to give up the right to a jury trial. I then hear the evidence. I'll make the determination of questions of fact including the question of guilty or not guilty. Do you understand that?

\* \* \*

DEFENDANT TOTAH: Yes, sir."

■ Thus, the foregoing exchange between the trial court and defendant Totah clearly demonstrates that the trial court admonished Totah of his constitutional right to trial by a jury in unambiguous language and explained the consequences of waiving said right. Moreover, defendant Totah had counsel by his side during the trial proceedings, and signed a written jury waiver form in open court and in the presence of the trial judge.

■ Defendant Totah concedes that he signed the waiver form and was personally admonished by the trial judge but argues that a linguistic handicap impeded his understanding of the trial court's admonitions of the consequences of a jury waiver. We also disagree.

The following exchange also took place at the outset of trial:

"DEFENDANT TOTAH: You know, when somebody talks to me fast I don't understand. Is it all right I bring somebody so they can explain something I don't understand?

THE COURT: Certainly. What is your main language?

DEFENDANT TOTAH: Arabic.

THE COURT: I'm going to have an Arabic interpreter brought up but you do speak English?

DEFENDANT TOTAH: I speak English but sometimes when somebody speak to me fast I don't understand.

THE COURT: For over a year you've been in front of me and I know I've spoken to you on many occasions. \* \* \* If somebody speaks to you too fast just point it out and stop them. Do you understand everything about the jury waiver?

DEFENDANT TOTAH: Yes.

THE COURT: And you want me to hear the case, not a jury. Is that right?

DEFENDANT TOTAH: Okay, yes."

Thus, the record reveals that the trial court accommodated

defendant Totah's linguistic handicap. Moreover, when a linguistic handicap is alleged, a reviewing court, which has before it only the written record, "should accord more than ordinary deference to the conclusions of the trial judge, who observed the witness' demeanor and gestures and heard possibly important variables of inflection and emphasis." (*People v. Ortiz* (1981), 96 Ill. App. 3d 497, 503, 421 N.E.2d 556; *People v. Niebes* (1979), 69 Ill. App. 3d 381, 387 N.E.2d 800.) Defendant Totah was provided with an interpreter and was given the opportunity to stop the trial proceedings if and when he failed to understand what was being said. Defendant Totah offers nothing to show that he failed to comprehend the trial judge's admonitions. More importantly, we believe that the deferential level of review applies especially to the case at bar. The trial judge saw and evaluated defendant Totah's reaction to the crucial constitutional question and was therefore best able to determine if defendant Totah's responses were intelligently and knowingly made. To conclude otherwise would be to second-guess the trier of fact, and we are not prepared to do so.

The State contends that defendant Totah waived the issue of the alleged denial of his constitutional right to trial by a jury when he failed to preserve it for review by objecting at trial and in his post-trial motion. Although the State's position may be well founded and valid, we choose to decide the issue on the merits as aforestated; there was no violation or denial of defendant Totah's constitutional right to trial by a jury.

Next, defendant Shabeah contends that he was denied his constitutional right to the effective assistance of counsel and argues that his counsel was physically and mentally unprepared; that his counsel failed to make a motion to exclude witnesses at the beginning of trial; that his counsel did not make a motion for a new trial; and that his counsel may have been the subject of disciplinary proceedings at the time of trial. We are of the opinion that defendant Shabeah failed to demonstrate that his counsel's performance and assistance were ineffective or incompetent.

■ To succeed on a sixth amendment claim of ineffective assistance of counsel defendant Shabeah must show that his counsel's performance "fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) Counsel's performance will not, however, be found to constitute ineffective assistance under the Constitution unless it is shown to be prejudicial to the defense. (466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.) To demonstrate the

prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Moreover, *Strickland* recognized that courts "need not decide the performance component of an ineffectiveness claim before analyzing the prejudice component, since an insufficient showing on either will defeat the constitutional claim." (*People v. Enoch* (1988), 122 Ill. 2d 176, 201, 522 N.E.2d 1124, 1137; *People v. Gaines* (1984), 105 Ill. 2d 79, 92-93, 473 N.E.2d 868, 876.) Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069.

■ In the case at bar, defendant Shabeah has not established that his counsel's alleged deficiencies prejudiced his defense. We believe that there is no "reasonable probability" that had defendant Shabeah's counsel been more proficient in the areas in which Shabeah now suggests his counsel should have been proficient, the proceedings would have been different.

The evidence established that defendant Shabeah in complicity with defendant Totah delivered a controlled substance. The evidence of Shabeah's guilt was convincing and overwhelming. By reason thereof and based on the testimony of Officer Slupski and the surveilling agents, the forensic scientist and the evidence as a whole, we are firmly convinced that defendant Shabeah's counsel advocated Shabeah's case as he was required to do by the sixth amendment to the United States Constitution. Therefore, defendant Shabeah's contention to the contrary does not merit further discussion.

Defendants Totah and Shabeah both contend that the State failed to prove them guilty of delivery of a controlled substance beyond a reasonable doubt.

■ It is well established in Illinois that a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Saldana* (1986), 146 Ill. App. 3d 328, 496 N.E.2d 757.) Moreover, when a reviewing court is presented with a challenge to the sufficiency of the evidence, it is not its function to retry the defendant. The relevant inquiry when the sufficiency of the evidence is at issue on review is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

In applying the guidelines set forth in *Collins*, we are of the opinion that defendant Totah delivered a controlled substance in complicity with defendant Shabeah. The evidence of defendant Totah's guilt was not only probable and satisfactory, it was overwhelming. By reason thereof and based on the convincing testimony of Officer Slupski, who witnessed the drug transaction and observed defendant Totah's participation in delivering and consummating the drug transaction, and the stipulated testimony by the forensic scientist that the powdery substance seized in defendant Totah's car was in fact cocaine, we are unalterably convinced that defendant Totah was proved guilty beyond a reasonable doubt of the crime for which he was charged.

Defendant Shabeah also contends that the State failed to prove him guilty of delivery of a controlled substance beyond a reasonable doubt. Defendant Shabeah argues that the State's evidence was insufficient to support his conviction based on the accountability theory.

Under the theory of accountability, the State has the burden of proving that the defendant solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense; that the participation by the defendant took place either before or during the commission of the offense; and that it must have been with the concurrent, specific intent to facilitate or promote the commission of the offense. *People v. Saldana* (1986), 146 Ill. App. 3d 328, 496 N.E.2d 757; *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821; *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544.

In applying the foregoing principles to the case at bar, we believe that Shabeah was proved guilty beyond a reasonable doubt for the crime for which he was charged. The record reveals that defendant Shabeah aided defendant Totah in planning and committing the offense, that Shabeah's participation occurred both before and during the delivery of the cocaine to Officer Slupski, and that Shabeah acted with specific intent to facilitate the commission of the offense. We conclude that there was sufficient evidence to support the jury's verdict.

Defendants Shabeah and Totah finally contend that the trial court abused its discretion in sentencing them to excessive terms of imprisonment. We disagree. Delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)) is a Class 1 felony with a

sentence of not less than 4 years' and not more than 15 years' imprisonment. Defendants Shabeah's and Totah's sentences of 8 and 10 years, respectively, are well within the statutorily imposed sentencing guidelines. When the trial court imposes a sentence which is within the statutory limits, it will not be altered on appeal absent an abuse of discretion by the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial court is the proper forum and is in a much better position to determine the punishment to be imposed because the factors used to arrive at a proper sentence are unavailable to the reviewing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Furthermore, the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) We find no basis to conclude that the trial court abused its discretion in sentencing defendants Shabeah and Totah. Accordingly, the defendants' judgments of conviction are affirmed.

Affirmed.

MURRAY, P.J., and COCCIA, J., concur.