THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBIN WILLIAMS, Defendant-Appellant.

First District (5th Division) No. 1—88—1644

Opinion filed June 7, 1991.—Rehearing denied August 12, 1991.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

John O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Guy L. Miller IV, and Avery L. Goodrich, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Robin Williams (Williams), defendant, was charged by indictment with two counts of murder and one count of armed violence. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2), 33A—2.) After waiving a jury trial, Williams was tried in a bench trial. Defendant was convicted of all three counts and sentenced to 24 years in the Illinois Department of Corrections.

On appeal Williams contends the following errors require a reversal of her convictions:

(1) Her conviction for murder should be reduced to voluntary manslaughter because the State's evidence established that Williams

killed her husband under serious provocation having discovered him in the act of adultery.

(2) The trial court's denial of her post-trial motion for a new trial based on charges of her trial counsel's ineffectiveness without an evidentiary hearing was error.

(3) The public defender who represented Williams in her post-trial motion was ineffective and seemed more concerned about protecting his colleague's interest than in vindicating Williams' rights.

(4) Williams' conviction for armed violence and one of her murder convictions should be vacated because the armed violence was predicated on the same act as the murder convictions and only one conviction for murder can stand where there is only one death.

For the following reasons we affirm one murder conviction, vacate the armed violence conviction and set aside one murder conviction and remand for a new sentencing hearing based on the single murder conviction.

The evidence at trial established the following facts. On April 19, 1986, the victim, George Williams (George), the husband of defendant, lived at 5419 West Washington with the defendant. George was the janitor of the apartment building located at that address. On April 20, 1986, Rena Jones, a tenant of the building, went to the Williamses' apartment to have George fix something. When she knocked on the back door, the door opened and she found George lying on his stomach in a pool of blood.

The parties stipulated that George had died of four stab wounds in his chest and back. The police arrived and found George lying in the kitchen with silverware and other items strewn about. Four to five feet from George's body, the police found a kitchen knife about eight inches long. No weapon was found on the deceased or near his body. The deceased had a ring of keys in his hand.

Charles Jones, the brother of Rena Jones, testified that he and his brother lived in the same building as his sister who found the victim's body. He stated that at midnight of April 19, 1986, he was at the corner intersection of Lotus and Madison with some friends. As he and friends were talking, Williams ran up and said, "Lord forgive me. I just killed my husband. Lord, please, please forgive me." Charles Jones, who had known the defendant for two to three years, walked back to the victim and defendant's apartment. Once at the apartment, Mr. Jones looked through a window of the apartment and saw the victim's body on the kitchen floor lying in a pool of blood. Neither he nor the defendant entered the apartment at that time. He testified that he told the defendant to call the police, but defendant had said that

she had called her mother and her mother told her to come over to her house.

Subsequently, Mr. Jones and defendant took a cab to her mother's apartment. Along the way they stopped at a gas station to purchase a pack of cigarettes. Mr. Jones stated that defendant did not mention the stabbing to the cab driver nor did she ask the gas station attendant who brought a pack of cigarettes to the car to call the police. When they reached defendant's mother's apartment, Jones said he told defendant's mother to call the police, but she did not. Mr. Jones remained at defendant's mother's house about three or four hours, during which time everyone drank liquor while defendant explained what happened. At one point, someone other than defendant suggested moving George's body to a trash can.

On cross-examination, Mr. Jones testified that he made a signed statement to police about this incident. He acknowledged that initially he told police he knew nothing about what happened to George. He further admitted that at no time after he saw George's body did he attempt to call the police. Mr. Jones indicated that he knew both George and the defendant for a number of years. He stated that he never saw them argue or hit each other. Subsequently, defense counsel showed him his signed statement and he acknowledged that he told police they argued a lot.

Officer Curley of the Chicago police department testified on behalf of the State. He testified that at 2:20 p.m. on April 20, 1986, when he spoke to Robin Williams he could smell alcohol on her breath. He advised defendant of her rights per *Miranda*, which she stated she understood. At this time Williams said that she had been staying at a friend's house for three to four days. At 6 a.m. on April 20, 1986, she left her friend's place to go to her mother's.

As she was talking, Curley noticed some reddish stains on defendant's clothing and shoes. Curley inquired as to how her clothing had become stained. Defendant told him that she had stopped at her apartment on the way to her mother's apartment at which time she found George lying in a pool of blood. George had one eye open and was breathing heavily so she tried calling the police through 911. Defendant claimed she was put on hold twice so she called her mother, who told her to come over to her house to discuss the matter. Defendant pulled the knife out of George's neck and went to her mother's apartment.

In a subsequent conversation with Officer Curley, defendant stated that when she came home, she wanted to kill George but he was already dead. Defendant stated she then left the apartment and

went over to Madison Street, where she meet Charles Jones, who accompanied her back to her apartment. The two of them viewed the body and then went to her mother's house, stopping along the way for cigarettes and some liquor. Officer Curley testified that after this conversation with defendant, he went to defendant's mother's home. At approximately 5:30 p.m. on April 20, 1986, Curley conducted a third interview with defendant. Curley testified that he again advised defendant of her constitutional rights per *Miranda* and she again responded that she understood. At this time, defendant stated that she entered the apartment through the front door. Arriving there she saw two women exiting her and George's bedroom. George was naked. The two started arguing. Williams went to the kitchen and started to fry some chicken. George came into the kitchen after putting on his pants and they continued to argue. George slapped the victim's head. Williams grabbed a knife and stabbed George several times.

It was stipulated that Robin Williams was arrested at 12:20 p.m. on April 20, 1986, at which time she told police she was 5 feet 4 inches and weighed 180 pounds. Further, it was stipulated that Williams' pants and shoes were tested and disclosed the presence of blood. Additionally, the parties stipulated to the printout log on April 19, 1986, of the 15th district zone unit, which is responsible for monitoring 911 calls from the address of 5419 West Washington. The printout showed no 911 calls from the Williams apartment or from their telephone number. Finally, the fact that the victim died of the stab wounds is undisputed. At the close of this evidence, defense counsel rested without presenting any evidence. The trial court found Williams guilty as indicated.

Defense counsel filed a motion for a new trial. He then amended the motion. He alleged his own ineffectiveness on the basis of withdrawing a pretrial motion, waiving a jury, stipulating to some of the State's evidence and advising his client not to testify. He stated that he took such action as a result of a pretrial plea conference where he misconstrued the judge's remarks as indicating he would find Williams guilty of voluntary manslaughter as opposed to murder.

After filing a motion for a new trial, the assistant public defender who defended Williams during her trial withdrew. An assistant public defender from the multiple defendants' division of that office was appointed to present Williams' motion for a new trial. Defendant's new counsel filed a second amended motion for a new trial or in the alternative an opportunity to reopen her defense to present additional witnesses. Post-trial counsel argued at the hearing on the motion that trial counsel made a number of errors in judgment and he had located

at least three witnesses he would consider calling in Williams' defense. In response, the prosecutor argued that the post-trial motion lacked specificity. The prosecutor asserted there was no indication who these three witnesses were, what they would testify to, or whether these were witnesses who were not discovered by trial counsel's investigation. Additionally, the prosecutor asserted that there is nothing to indicate that if defendant were allowed to reopen her case to tell her side of the story, that this still would be anything less than murder. Further, the prosecutor stated that the evidence favorable to defendant on previous injuries she received at the deceased's hands, which was not presented to the court, involved a broken jaw the deceased gave her when she poured boiling grease on him. Defendant had admitted to medical personnel that she was the instigator of these injuries so she could not rely on these. Moreover, the prosecutor stated that if the defendant put on some sort of self-defense theory, the court would learn of defendant's prior aggravated battery conviction where she stabbed Aaron Robinson in the same way as the deceased. Defense counsel countered that Aaron Robinson had previously raped Williams. Finally, the prosecutor noted that Williams' own statement did not indicate she was in fear.

The trial court noted that in the instant case the original defense attorney did a "yeomanship job" and that to fall back on his own incompetence after he loses a case was completely unacceptable. The trial court denied the amended motion for a new trial and denied the motion to reopen that part of defendant's case that was not presented at trial. After denial of the post-trial motion, a hearing in mitigation and aggravation was conducted, and defendant was sentenced to 24 years with the Illinois House of Corrections. Defendant appeals her convictions.

## I

The defendant's first point is that the State did not prove beyond a reasonable doubt that Williams murdered her husband, but rather that the evidence disclosed voluntary manslaughter. The defendant's argument that the State failed to prove her guilty of murder beyond a reasonable doubt is unpersuasive.

Illinois criminal law on the difference between murder and manslaughter has been a subject of some confusion. Murder is defined as:

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intended to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).) (Effective January 1, 1988, the statute was amended to read "first degree murder.")

Alternatively, voluntary manslaughter is defined as:

"A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) (Effective July 1, 1987, the term "voluntary manslaughter" appears to have been replaced by the term "second degree murder." Ill. Rev. Stat. 1987, ch. 38, par. 9—2.)

The distinction between murder and manslaughter is the recognition by law of human failings under stress, and this distinction is designed to aid the person who, through no fault of his or her own, finds him or herself in a situation where one's judgment may be impaired. *People v. Monigan* (1981), 97 Ill. App. 3d 885, 423 N.E.2d 546.

■■■ Discovering one's spouse committing adultery has long been considered such a stressful situation as to support a finding of voluntary manslaughter. (*People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451.) In Illinois, however, adultery as a provocation has generally been limited to those instances where the parties are discovered in the act or immediately before or after such act, and the killing immediately follows such discovery. (*People v. Chevalier* (1989), 131 Ill. 2d 66, 72, 544 N.E.2d 942.) A verbal communication that adultery has or will occur falls within the rule that mere words are insufficient provocation. (*People v. Middleswart* (1984), 124 Ill. App. 3d 35, 39, 463 N.E.2d 1050.) The court in *People v. Arnold* (1974), 17 Ill. App. 3d 1043, 1047, 309 N.E.2d 89, held that the defendant's long belief that his spouse had committed adultery was not a basis for reducing a slaying from murder to voluntary manslaughter. However, an admis-

sion of adultery is equivalent to a discovery of the act itself and is sufficient evidence as to the provocation to require an instruction to the jury on involuntary manslaughter. (*People v. Chevalier* (1989), 131 Ill. 2d 66, 72, 544 N.E.2d 942, citing *Commonwealth v. Schnopps* (1981), 383 Mass. 178, 181, 417 N.E.2d 1213, 1215.) Passion on the part of a slayer, no matter how violent, will not relieve him of liability for murder unless it is engendered by a serious provocation which the law recognizes as being reasonably adequate; and if the provocation is inadequate, the crime is murder. (*People v. Chevalier* (1989), 131 Ill. 2d 66, 73, 544 N.E.2d 942.) Since voluntary manslaughter based on provocation requires evidence of a sudden passion, a history of marital discord undermines, rather than supports, such a claim. *People v. Chevalier* (1989), 131 Ill. 2d 66, 75, 544 N.E.2d 942.

■ The relevant question for a reviewing court when presented with a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In answering that question an appellate court must view the evidence in the light most favorable to the prosecution. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 9.) A conviction will be reversed on appeal if the evidence is improbable, unconvincing or contrary to human experience. (*People v. Coulson* (1958), 13 Ill. 2d 290, 296-97, 149 N.E.2d 96.) However, it is not the function of the reviewing court to retry a defendant when reviewing a challenge to the sufficiency of the evidence of his guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Rather, determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889.

■ Williams observed her husband follow two women out of their bedroom. George went back to his room and got dressed. The parties argued. Williams started cooking chicken. George slapped Williams. Ultimately, Williams stabbed George four times. Since George and Williams were the only people present in the apartment at the time of the stabbing, no one knows exactly how much time elapsed during the aforestated sequence of events. Whether that time period constituted a sufficient time frame to "cool off" depended on the magnitude of the deceased's act and the degree to which Williams' passions were aroused. (*People v. Harris* (1987), 154 Ill. App. 3d 308, 506 N.E.2d 1353.) It is defendant's state of mind at the time of the incident that is critical in determining whether there has been a sufficient cooling off period following a prior provocation so as to elevate an offense

from voluntary manslaughter to murder. *People v. Hudson* (1979), 71 Ill. App. 3d 504, 390 N.E.2d 5.

■ Upon reviewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the elements of murder and found defendant guilty of that offense beyond a reasonable doubt. We do not believe the evidence in this case was improbable, unconvincing, or contrary to human experience. Further, considering all of the evidence, we conclude that a rational trier of fact could find beyond a reasonable doubt that defendant did not act under a sudden passion resulting from adequate provocation. Accordingly, we affirm one of the two murder convictions.

## II

Defendant argues that the denial of her motion for a new trial without a full evidentiary hearing on the claim of trial counsel's ineffectiveness was error, because the allegations by counsel of his own ineffectiveness taken with the record raised claims based on matters outside the record which required an evidentiary hearing for the resolution of the merits of the claims.

■ Incompetency of a trial lawyer cannot be judged by what he or she feels he should have done after the trial is over. After a trial, whether it be civil or criminal, every lawyer, no matter how experienced, can think of a number of things he or she should have said or done as well as matters that should have remained unsaid or undone. The test of incompetency by a trial, post-trial, or appellate lawyer is based on a showing that the counsel's performance fell below an objective standard of reasonableness and was prejudicial to the defense. To demonstrate prejudice one must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Totah* (1989), 192 Ill. App. 3d 239, 548 N.E.2d 678.) Nothing in this record discloses that either the trial lawyer or the post-trial lawyer was "incompetent" as that word has been used by appellate courts.

In order to establish the ineffectiveness of counsel, "a defendant must show (1) that counsel committed errors 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' and (2) that those errors, in fact were prejudicial to his defense." *People v. Collins* (1985), 106 Ill. 2d 237, 273, 478 N.E.2d 267, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

Counsel's performance will not, however, be found to constitute ineffective assistance under the Constitution unless it is shown to be prejudicial to the defense. (*Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.) To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ "Moreover, *Strickland* recognized that courts 'need not decide the performance component of an ineffectiveness claim before analyzing the prejudice component, since an insufficient showing on either will defeat the constitutional claim.' " (*People v. Totah* (1989), 192 Ill. App. 3d 239, 249, 548 N.E.2d 678, quoting *People v. Enoch* (1988), 122 Ill. 2d 176, 201, 522 N.E.2d 1124, 1137.) Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069.

Representation by counsel is constitutionally deficient if the incompetence produced substantial prejudice to the defendant, without which the result probably would have been different. A determination of the competency of a defendant's counsel should not focus solely on isolated instances during trial, but rather, should consider the totality of the circumstances surrounding the trial. Effective assistance of counsel is not synonymous with perfect representation. (*People v. Harris* (1987), 154 Ill. App. 3d 308, 319, 506 N.E.2d 1353, 1361.) The Strickland test may be set aside only when counsel entirely fails to subject the prosecutor's case to a meaningful adversarial testing. (*People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118.) As the State points out, this is not such a case. Defense counsel did not concede defendant's guilt, he subjected each of the State's witnesses to thorough cross-examination pointing out inconsistencies in each witness' testimony.

■ In order to successfully raise an ineffective assistance of counsel argument, the defendant must show that counsel's representations were unreasonable and counsel's shortcomings were so serious that the defendant was denied a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Defense strategy will generally not support a claim of ineffective representation. (*People v. Flores* (1989), 128 Ill. 2d 66, 106, 538 N.E.2d 481.) Further, to prove ineffective assistance of counsel, " 'defendant must overcome the presumptions

that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*People v. Nitz* (1991), 143 Ill. 2d 82, 112, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) In light of the facts in this case, regardless of the motivation, we feel trial counsel's decisions represented sound trial strategy.

Moreover, in order for a defendant to establish prejudice, he must demonstrate, "not simply a possibility of prejudice, but that the claimed error worked to his actual and substantial disadvantage." (*People v. Moore* (1990), 208 Ill. App. 3d 515, 522, 567 N.E.2d 466, quoting *People v. Owens* (1989), 129 Ill. 2d 303, 318, 544 N.E.2d 276.) The defendant must show that but for the counsel's errors, the result of the trial would have been different. *Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246.

■■■ In reviewing counsel's representation, we initially look to the existence of prejudice to determine if defendant was deprived of his constitutional right to the effective assistance of counsel. Trial counsel waived a jury, failed to file motions to suppress, stipulated to evidence and advised his client not to testify. However, the defendant admitted the killing of her husband to Charles Jones, the police and an assistant State's Attorney. Evidence of blood was found on defendant's clothes and shoes. In addition she stated that she called the police where the evidence indicated she had not. With respect to previous injuries defendant stated she had received at decedent's hand, she had admitted that she was the instigator of those injuries. All of this evidence would have exploded the defendant's concept of fear of her husband and stabbing him in the heat of passion. Finally, if Williams had advanced some self-defense theory the prosecutor would have been able to bring out that Williams had been previously convicted of aggravated battery for the prior stabbing of Aaron Robinson.

Illinois courts have repeatedly held that a defendant may base his motion for a new trial on matters outside of the record. (*People v. Follins* (1990), 196 Ill. App. 3d 680, 554 N.E.2d 345; *People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 1132.) However, a trial court is not required to hold an evidentiary hearing pertaining to matters outside the record if the allegations are insufficient to establish a basis for a new trial. *People v. Morrison* (1985), 137 Ill. App. 3d 171, 182, 484 N.E.2d 329, 338.

■■■ A thorough review of the record does not show that trial counsel's performance fell below an objective standard of reasonableness, nor does the record reveal that the defendant was prejudiced by trial counsel's conduct. Further, the defendant's third counsel has

failed to articulate what additional evidence could have been presented to support a defense of voluntary manslaughter. Assuming *arguendo* that trial counsel made errors in judgment or trial strategy, defendant has failed to show that the outcome of the trial would have been different.

### III

Defendant further argues that the assistant public defender appointed to represent Robin Williams on her post-trial motion was ineffective, because he made only a superficial attempt to raise the allegation of trial counsel's ineffectiveness and seemed more concerned with protecting his colleague's interests than vindicating Williams' rights. Defendant asks this court to reverse and remand for an evidentiary hearing with appointment of new counsel.

Williams asserts that the vagueness in the presentation of the claims of trial counsel's ineffectiveness seems to stem from post-trial counsel's discomfort in alleging his colleague's ineffectiveness.

■■■ ■ Williams correctly points out in *People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617, the Illinois Supreme Court held that there is no *per se* conflict of interest for one assistant public defender to represent a defendant on a claim of ineffectiveness of another public defender, but that a case-by-case inquiry should be conducted to determine if there is a presence of actual conflict by such a representation. Williams goes on to argue that the following argument by post-trial counsel demonstrates such an actual conflict.

> "I would prefer if the court would allow us to reopen this case just to obviate a problem on behalf of Mr. Smith [trial counsel] as fellow attorney and just to make the case based on the merits as opposed to something less than the merits."

Williams claims that these comments indicate post-trial counsel was concerned with his "fellow attorney's" problem, not necessarily his client's interests, thus, under the circumstances, Williams was deprived of effective assistance of counsel on her post-trial motion. The State argues that the comment does not indicate a conflict of interest, but rather indicates a request to the court to focus on the merits of the case. We agree with the State's argument.

The State argues post-trial counsel documented each instance of alleged incompetence on the part of trial counsel in his second amended motion and that, additionally, he undertook an independent evaluation of defendant's claims by presenting three additional allegations where he felt trial counsel made error. Defendant argues that this was inadequate because post-trial counsel copied verbatim trial

counsel's three-page amended motion for a new trial which set out trial counsel's ineffectiveness for making certain determinations based upon the mistaken notion from the plea conference that the court was going to find Williams guilty of voluntary manslaughter. Defendant added that, additionally, post-trial counsel added three small allegations to the issue of trial counsel's ineffectiveness.

■ Defendant appears to argue that post-trial counsel was ineffective because he copied the ineffectiveness claims made by original trial counsel and added three small additional allegations. This argument lacks merit. It is rare for an attorney to make allegations as to his own ineffectiveness. The fact that post-trial counsel copied these allegations verbatim is not evidence of ineffective performance. Post-trial additional allegations evidence an independent investigation. We note the entire record on appeal is only 260 pages. The trial transcript is only 163 pages. We do not feel that the number of allegations or the "size" of the allegations is determinative of post-trial counsel's ineffectiveness.

■ Further, as previously discussed, to successfully establish ineffective assistance of counsel, the defendant must demonstrate actual incompetence which substantially prejudiced the defendant. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.) We do not feel that defendant has met that burden.

■ Williams has a third assistant public defender representing her on appeal. The defense asks this court to remand the matter to the trial court for an evidentiary hearing in order to determine if post-trial counsel's performance was ineffective. Nowhere in the record, nor in the briefs on appeal, does the defense articulate the additional evidence that indicates the outcome of the trial would have been affected.

## IV

■ Williams' final point has merit. Robin Williams was charged with two counts of murder and one count of armed violence. She was found guilty as charged and sentenced to 24 years in prison. The order of sentence reflects convictions for two counts of murder and one count of armed violence. Williams argues that George Williams was the only murder victim; thus, Robin Williams can only be convicted on one count of murder. The State urges us to uphold all three convictions. However, the rule in Illinois is that where only one person is murdered, there can be but one conviction. (*People v. Kidd* (1989), 180 Ill. App. 3d 1065, 536 N.E.2d 816; *People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193.) Since George was the only decedent, we find

Robin Williams guilty of one crime, the fatal stabbing of her husband, not three as the State contends.

■■■ The State maintains that the multiple convictions were proper because each was predicated on the fact that at least three separate acts occurred. It is true, as the State asserts, that closely related moments can in certain situations support multiple convictions. This court, in *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165, upheld three separate convictions for aggravated battery where the defendant, in the course of struggling for several minutes with the intended victim of a robbery, stabbed him three times. In *People v. Young* (1989), 187 Ill. App. 3d 977, 543 N.E.2d 986, this court held that a defendant was properly convicted of both armed violence and of murder. However, in that case, the defendant was held to have committed two separate acts against the victim when he shot the victim in the face, fired shots at two of the victim's companions, then walked over to where the victim was crawling and shot him in the head. The court held that the two shots fired at the victim were separated by the intervening act of firing at the victim's companions. In *People v. Ayala* (1990), 208 Ill. App. 3d 586, 567 N.E.2d 450, this court held that when the second of two gunshots fired by defendant at the victim was fired after the victim had fallen down, had begun to flee, and had stopped to notice the crowd that had gathered at the scene, the two gunshots sufficiently constituted separate and distinct overt or outward manifestations.

However, other cases have held that when a defendant commits even several acts against a victim during a single attack, and the attack is the basis for more than one charge, only one conviction and sentence can be obtained. See *People v. Gvojic* (1987), 160 Ill. App. 3d 1065, 513 N.E.2d 1083 (multiple stab wounds resulting from a single attack held to be the result of only one act).

■■■ Since we have already determined that only one conviction for murder can stand, the question becomes whether the successive stabbings in the present case were separate acts so as to support both a conviction for armed violence and a conviction for murder. In *People v. Guzman* (1990), 208 Ill. App. 3d 525, 535, 567 N.E.2d 500, this court recently articulated that

> "[t]he factors that must be taken into account in determining whether the defendant's conduct constituted a single physical act or several separate and distinct acts are: (1) prosecutorial intent, as reflected in the language of the indictment; (2) the existence of an intervening act; (3) the time interval between successive parts of the defendant's conduct; (4) the victim's

identity; (5) the similarity of the acts; and (6) the location of the acts." *People v. Guzman* (1990), 208 Ill. App. 3d 525, 535, 567 N.E.2d 500 (defendant fired six consecutive shots in a single location), citing *People v. Ellis* (1986), 143 Ill. App. 3d 892, 895-96, 493 N.E.2d 739.

 In applying the foregoing factors to the case at bar, we conclude that defendant's conviction and sentence for armed violence must be vacated. The evidence revealed that Williams stabbed her husband four times. There were stab wounds in his chest and back. Except for the physical location of the wounds, they appeared to be inflicted in the same manner. No evidence was presented as to any intervening acts or any significant amount of lapsed time between the infliction of each stab wound. Moreover, the indictments charged that Robin Williams: (1) "without lawful justification intentionally and knowingly stabbed and killed George Williams with a knife," (2) "without lawful justification stabbed and killed George Williams with a knife knowing that such stabbing created a strong probability of death or great bodily harm," and (3) "while armed with a dangerous weapon, to wit: a knife, committed a felony defined by Illinois law, to wit: murder." In light of the foregoing facts, we find that defendant's convictions for armed violence and two counts of murder were predicated on a single physical act, and therefore, the armed violence conviction and one murder conviction must be vacated. Accordingly, we remand the cause to the trial court for a resentencing hearing on the single murder conviction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

LORENZ, P.J., and GORDON, J., concur.