THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYLVESTER SMALLEY, Defendant-Appellant.

First District (5th Division) No. 1—89—0950

Opinion filed December 27, 1991.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kevin Sweeney, and Michael Latz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a trial without a jury, defendant Sylvester Smalley was found guilty of first degree murder and armed violence. The court sentenced defendant to concurrent prison terms of 24 years for first degree murder, and 10 years for armed violence. On appeal, defendant contends that the Illinois murder statute is unconstitutional; that his conviction for first degree murder must be reduced to second degree murder; that the convictions for first degree murder and armed violence were based on the same physical act; and that the trial court erred in failing to appoint new counsel for defendant during his posttrial and sentencing hearings.

At trial, Thelma Peterson testified for the State that on December 21, 1987, defendant stabbed and killed her daughter, Sharon Evans. Peterson lived with her boyfriend, A.C. Brown; her daughter; and her daughter's three children, all of whom were home on the night of the murder. Defendant had been dating decedent. On December 21, 1987, at 10 p.m., defendant argued with her, and she then asked defendant to leave. Defendant then cut the telephone lines in the apartment. Peterson tried to intervene between defendant and her daughter, and defendant cut her hand. Peterson did not see a knife. Peterson then left the apartment and went to a neighbor's to telephone the police. When she returned, her daughter was lying on the bed, bleeding. Peterson did not see anyone push or threaten defendant. She did not hear an argument earlier that evening. Peterson told the police there had been a fight between decedent and defendant. She gave the police a knife which she found in the kitchen.

Latrice Evans, decedent's 11-year-old daughter, testified that on December 21, 1987, she heard defendant and her mother argue about money. (A friend named Renee was present, but she soon left.) About two hours later, Latrice saw defendant, Peterson, Brown and decedent in Peterson's bedroom. She saw defendant cut the telephone line

with a knife. Latrice went into the kitchen to telephone the police, but defendant followed her and cut the telephone line there, also. Defendant placed the knife into his back pocket. Latrice took the knife out of his pocket when defendant turned away. Defendant pushed Latrice down and took the knife back. The knife blade was four or five inches long.

Latrice then saw defendant approach her mother. Peterson stepped between them, but defendant cut her hand. When Peterson left the room, defendant grabbed decedent by the hair, struck her, knocked her to the bed and stabbed her twice.

Brown testified that on December 21, 1987, he saw decedent and defendant enter Peterson's bedroom. He was watching television in the bedroom and did not hear their argument. Decedent asked defendant to leave. Defendant slapped her. He then cut or pulled out the phone lines. Peterson tried to intervene, and defendant cut her hand. When Peterson left the room, Brown saw defendant knock decedent down, get on top of her and stab her twice. Brown never saw anyone threaten or strike defendant. On cross-examination, Brown denied telling the police he had heard the argument or that he had seen anyone push defendant.

The parties stipulated that Dr. Tae Lyong An, a medical examiner, would testify that decedent suffered four stab wounds and that she died as a result of those wounds.

An audio tape of the telephone call reporting the crime to the police was played in chambers.

Defendant testified that he was living with decedent. On December 21, 1987, he had been drinking white port and Kool-aid with decedent and Renee. Defendant testified that decedent liked to get high by taking her blood pressure pills and Tylenol. That night, he, decedent, and Renee injected heroin and cocaine. He argued with decedent for about 15 minutes concerning the proceeds of a lottery prize and an insurance payment. Defendant testified further that decedent was angry because she wanted more drugs. He reassured her that he would try to get more drugs. Decedent slapped him, and he grabbed her arms. They fell down, with defendant on top. Peterson came in and started to strike defendant on the head with a stick. Defendant tried to use the telephone to call his mother for money to buy decedent drugs. Decedent either knocked the telephone from defendant's hands or defendant threw it.

Defendant testified further that shortly thereafter, decedent went "berserk." Latrice then "slung" a knife at him. Defendant took the knife and continued arguing with decedent. He saw decedent fall and

saw blood on the floor. Defendant saw Peterson with something in her hands. He then became frightened and ran from the apartment, throwing the knife up onto a roof.

Officer Murphy testified that he interviewed Peterson, Brown and Latrice. Peterson told the police that defendant and decedent had been fighting about money and had been drinking. Latrice did not tell the police that defendant cut the telephone lines in her grandmother's room. Brown told the police that he heard defendant and decedent arguing before they entered the room and that they were fighting about money. Brown pushed defendant. Brown did not tell the police that defendant cut the telephone cord or pulled the cord out of the wall.

The parties stipulated that the autopsy revealed that decedent's blood contained no cocaine or heroin. Her blood did contain evidence of alcohol (.015 milligrams) and codeine (223 milligrams per milliliter) consumption.

The court found defendant guilty of two counts of first degree murder and one count of armed violence. The mittimus, however, shows defendant was convicted of only one count of murder and one count of armed violence.

Defendant filed a *pro se* post-trial motion for a new trial, which the court denied.

OPINION

■ Defendant first contends that the Illinois murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—1 *et seq.*) is unconstitutional because it violates his rights to due process and equal protection, and violates the separation of powers doctrine. This court recently rejected identical arguments in *People v. Davis* (1991), 221 Ill. App. 3d 1023, 1026-28, citing numerous other opinions rejecting these arguments. (See, e.g., *People v. Newbern* (1991), 219 Ill. App. 3d 333, 579 N.E.2d 583; *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090; *People v. Thomas* (1991), 216 Ill. App. 3d 469, 576 N.E.2d 1020; *People v. Doss* (1991), 214 Ill. App. 3d 1051, 574 N.E.2d 806; *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041.) We follow those decisions and find the statute under which defendant was convicted to be constitutional.

Defendant next contends that his conviction for first degree murder should be reduced to second degree murder because the evidence shows serious provocation.

First degree murder requires proof beyond a reasonable doubt that defendant intentionally killed the victim. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a).) However, if defendant proves, by a preponderance of

the evidence, the mitigating factor that "at the time of the killing he [was] acting under a sudden and intense passion resulting from serious provocation," the offense is reduced to second degree murder. Ill. Rev. Stat. 1989, ch. 38, pars. 9—2(a), (c).

■ The question of whether a homicide constitutes first or second degree murder is for the trier of fact. (*People v. Falconer* (1988), 168 Ill. App. 3d 618, 522 N.E.2d 903.) Mutual combat qualifies as serious provocation only if decedent's conduct is serious enough to unleash an intense passion in a reasonable person. (*People v. Pugh* (1989), 187 Ill. App. 3d 860, 543 N.E.2d 875.) If the provocation is slight and the retaliation is disproportionately great, the crime is first degree murder. *People v. Chevalier* (1989), 131 Ill. 2d 66, 544 N.E.2d 942; *People v. Dowdell* (1980), 84 Ill. App. 3d 707, 406 N.E.2d 123.

■ Upon reviewing the evidence in the light most favorable to the prosecution (see *People v. Williams* (1991), 215 Ill. App. 3d 800, 576 N.E.2d 68), we conclude that a rational trier of fact could find beyond a reasonable doubt that defendant did not act under a sudden passion resulting from adequate provocation.

The testimony of the State's witnesses establishes that defendant argued with decedent about money, and the argument began perhaps as long as two hours before the murder. Decedent asked defendant to leave the apartment. Defendant then cut the telephone lines in one room, followed decedent's daughter into the kitchen when she tried to use another telephone, and then cut those lines, too. This conduct would indicate that defendant was not acting under sudden passion.

Defendant pushed decedent's mother out of the way, cutting her hand. Defendant also knocked decedent's 11-year-old daughter down after she managed to get the knife away from him. Defendant grabbed decedent by the hair, knocked her down, got on top of her, and stabbed her four times. All four of the State's witnesses testified that defendant was never attacked or threatened.

It is not sufficient to constitute intense provocation that the unarmed decedent and defendant had argued. See *People v. Williams*, 215 Ill. App. 3d 800, 576 N.E.2d 68 (affirming first degree murder and rejecting defendant's contention that sufficient provocation had been established where defendant saw her husband leave their bedroom with two women, the women left, defendant and her husband argued, the husband slapped defendant, and defendant stabbed him four times).

The trier of fact could properly find that defendant failed to prove by a preponderance of the evidence that a reasonable person would not have reacted with intense passion and attacked decedent with a

knife, stabbing her four times, if they had argued over the proceeds of a lottery prize and an insurance refund.

Defendant next contends that his convictions for first degree murder and armed violence were based upon the same physical act.

■ Multiple convictions must be vacated when they are based on the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) In determining whether defendant's conduct constituted a single physical act, the court must take into account the prosecutorial intent as reflected in the indictment; the existence of an intervening act; the time interval between successive parts of the defendant's conduct; the victim's identity; the similarity of the acts; and the location of the acts. *People v. Guzman* (1990), 208 Ill. App. 3d 525, 535, 567 N.E.2d 500.

■ Here, the evidence established that defendant stabbed decedent four times. The location of the stab wounds on decedent's body is not indicated in the record. There is no evidence of any acts, even decedent's struggling against defendant, which might have intervened between the stab wounds, or of any time lapse between each stab wound. The wounds were all inflicted on decedent in the same room in the apartment. Moreover, the language of the indictment treats the stabbing as one physical act. See *People v. Williams* (1991), 215 Ill. App. 3d 800, 576 N.E.2d 68 (wife's four stabbings of husband in one attack were not separate acts and thus could not support convictions for both armed violence and murder); *People v. Gvojic* (1987), 160 Ill. App. 3d 1065, 513 N.E.2d 1082 (multiple stab wounds resulting from a single attack held to be the result of only one act).

We conclude that defendant's convictions for armed violence and murder were predicated on a single physical act. Thus, the armed violence conviction must be vacated. We remand for a new sentencing hearing on the murder conviction. See *People v. Fields* (1990), 199 Ill. App. 3d 888, 557 N.E.2d 629 (new sentencing hearing required where one conviction vacated, and in sentencing on second conviction, the judge may have been influenced by the now vacated conviction); *People v. Watts* (1990), 195 Ill. App. 3d 899, 918, 552 N.E.2d 1048, 1060-61 (same).

Defendant finally contends that the trial court erred in denying his *pro se* motion for a new trial and in failing to appoint new counsel to represent him at his motion for a new trial and at his sentencing hearing.

Following trial, the court held a joint hearing on defendant's motion for a new trial and sentencing. Defense counsel presented and argued a motion for a new trial. The court denied the motion. Defend-

ant then presented a *pro se* motion for a new trial, alleging ineffective assistance of counsel. In his motion, he referred to counsel's failure to call "witnesses or professional or psychological or drug counselors or psychiatric counselors" to testify. There is no specific identification of those witnesses in the motion. The court heard argument from both sides and then denied the *pro se* motion. The court found that defense counsel had done a competent job during the trial.

■ There is "no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel." (*People v. Nitz* (1991), 143 Ill. 2d 82, 134, 572 N.E.2d 895, construing *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045.) In *Nitz*, the court found it was error to force defense counsel into a conflict of interest by ordering him to question the witnesses who defendant maintained should have been called to testify at trial. (*Nitz*, 143 Ill. 2d at 135.) The court found, however, that it was harmless beyond a reasonable doubt where the court determined that the witnesses' testimony did not support defendant's representations. *Nitz*, 143 Ill. 2d at 135.

Defendant asks, however, that we remand for a new post-trial hearing "because at a minimum, the trial judge is required to inquire into the defendant's allegations" of ineffective assistance of counsel.

■ We acknowledge that the better procedure might have been for the trial judge to question defense counsel. (See *People v. Nitz* (1991), 143 Ill. 2d 82, 572 N.E.2d 895 (where trial court held an evidentiary hearing and asked defense counsel to explain his reasons for not having two individuals testify at trial); *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466; *People v. Jameson* (1987), 155 Ill. App. 3d 650, 508 N.E.2d 267.) However, any impropriety here did not rise to the level of error requiring remandment for a new posttrial hearing where the record clearly shows that the alleged errors asserted by defendant fail to support the possibility of ineffective assistance of counsel. See *People v. Nitz*, 143 Ill. 2d at 135.

The test of incompetency is based on a showing that the attorney's performance fell below an objective standard of reasonableness and was prejudicial to defendant. In order to establish prejudice, defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694-96, 80 L. Ed. 2d 674, 698-99, 104 S. Ct. 2052, 2068-69.) Defense trial strategy will generally not support a claim of ineffective representation. *People v. Flores* (1989), 128 Ill. 2d 66, 106, 538 N.E.2d 481; *People v. Williams* (1991), 215 Ill. App. 3d 800, 576 N.E.2d 68.

Defendant maintains on appeal that trial counsel could have called an expert witness, or Renee Jenkins, to establish that defendant acted with serious provocation. A decision whether to call such witnesses falls within matters of trial strategy. (*People v. Bodoh* (1990), 200 Ill. App. 3d 415, 558 N.E.2d 178.) Moreover, defendant suffered no prejudice since the result of the proceeding would have been no different, given the overwhelming evidence that defendant did not murder decedent as a result of adequate provocation, as discussed above. Thus, assuming that trial counsel had made an error in trial strategy, defendant has failed to show that the outcome of the trial would have been different. See *People v. Williams* (1991), 215 Ill. App. 3d 800, 576 N.E.2d 68.

Accordingly, the judgment of the circuit court of Cook County finding defendant guilty of first degree murder is affirmed, and the cause is remanded with directions to vacate the conviction and sentence for armed violence, and hold a new sentencing hearing on the murder conviction alone.

Judgment affirmed in part; vacated in part; and remanded with directions.

MURRAY and McNULTY, JJ., concur.