(Nos. 66993, 67077 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MAURICE CHEVALIER, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ESTEBAN FLORES, Appellee.

*Opinion filed September 20, 1989.*

68

Neil F. Hartigan, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, Robert J. Biderman and Linda Susan Cullom, of the State's Attorneys Appellate Prosecutor,

of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Judith L. Libby, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

Neil F. Hartigan, Attorney General, of Springfield, and Robert F. Casey and Gary V. Johnson, State's Attorneys, of Geneva (Kenneth R. Boyle, William L. Browers and Martin P. Moltz, of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Steven E. Wiltgen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

In each of these consolidated cases, the defendant shot and killed his wife and was convicted of murder. Defendants do not dispute that they committed the killings or that the killings were not legally justified. They contend that the evidence was sufficient to warrant giving the jury an instruction on the offense of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2). The issue common to both appeals is whether the provocation on the part of the victim was legally adequate to reduce the homicide from murder to voluntary manslaughter. In addition, in People v. Flores, No. 67077, defendant contends that testimony that defendant had threatened his wife was inadmissible hearsay and that

the admission of this evidence constitutes reversible error.

In each case, the appellate court reversed the conviction and remanded the case for a new trial. (*Chevalier*, 167 Ill. App. 3d 790; *Flores*, 168 Ill. App. 3d 636.) We granted the petitions for leave to appeal filed by the State in both cases (107 Ill. 2d R. 315), and the actions were consolidated for purposes of review. We reverse the judgments of the appellate court and reinstate the convictions of murder.

The facts of each case are fully set forth in the appellate court opinions and need not be repeated here. Although the details differ, the circumstances surrounding the killings are similar. In each, defendant suspected his wife of marital infidelity. Just prior to the killing, the defendant and the victim had an argument, during which the victim admitted committing adultery and either disparaged the defendant's sexual abilities (People v. Chevalier) or flaunted the fact that she slept with her lover in the marital bed (People v. Flores). The victims were shot during these arguments. Defendant Chevalier concealed the shooting, eventually driving from Illinois to Michigan to deposit the body along a highway. Chevalier told a police officer that he took the body to Michigan because the grass along the roadway there is left uncut all summer.

During Flores' trial, an attorney whom the victim had consulted about a divorce testified for the State. The attorney, Eugene Griffin, testified that the victim told Griffin that defendant had threatened her. The trial court instructed the jury that this testimony was admissible only to show the declarant's state of mind and not the truth of the assertion. Four other witnesses, all relatives of the victim, also testified to threats made by the defendant.

In People v. Flores, the trial court refused to give defendant's tendered jury instruction on the offense of voluntary manslaughter. In People v. Chevalier, although the trial court instructed the jury on voluntary manslaughter, defendant contends that the instruction was erroneous; the appellate court agreed. We need not address the accuracy of the jury instruction, however, unless Chevalier was entitled to a voluntary manslaughter instruction. As Chevalier appears to concede, if the evidence did not support such an instruction, then an erroneous instruction on the offense could not have prejudiced defendant. Accordingly, we turn to a consideration of whether defendants were entitled to a voluntary manslaughter instruction.

## VOLUNTARY MANSLAUGHTER

At the time of the offenses, section 9—2 of the Criminal Code of 1961 provided as follows:

> "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) The individual killed[.]
> ***
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." Ill. Rev. Stat. 1983, ch. 38, par. 9—2.

The principles governing voluntary manslaughter based on serious provocation are well established. "The only categories of serious provocation which have been recognized are: 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property.' (S.H.A., chap. 38, par. 9—2, Committee Comments ***.)'' (People v. Crews (1967), 38 Ill. 2d 331, 335.) The rule that mere words are insuf-

ficient provocation applies no matter how aggravated, abusive, opprobrious or indecent the language. *E.g., People v. Neal* (1983), 112 Ill. App. 3d 964, 967.

In Illinois, adultery with a spouse as provocation generally has been limited to those instances where the parties are discovered in the act of adultery or immediately before or after such an act, and the killing immediately follows such discovery. (*People v. Harris* (1984), 123 Ill. App. 3d 899, 904; *People v. Middleswart* (1984), 124 Ill. App. 3d 35, 39; *People v. Wax* (1966), 75 Ill. App. 2d 163, 182.) A verbal communication that adultery has occurred or will occur falls within the rule that mere words are insufficient provocation. *Middleswart*, 124 Ill. App. 3d at 40; see also *People v. Arnold* (1974), 17 Ill. App. 3d 1043, 1047 (defendant's long-held belief that his wife had committed adultery was not a basis for a voluntary manslaughter instruction); contra *Commonwealth v. Schnopps* (1981), 383 Mass. 178, 181, 417 N.E.2d 1213, 1215 (a sudden admission of adultery is equivalent to a discovery of the act itself, and is sufficient evidence of provocation).

The appellate court decisions in the cases at bar, in concluding that defendants were entitled to the requested instruction, followed *People v. Ambro* (1987), 153 Ill. App. 3d 1, which in turn relied on *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, and *People v. Carr* (1980), 91 Ill. App. 3d 512. These cases recognize an exception to the general rule that a verbal communication of adultery is insufficient provocation.

*Ahlberg* was an appeal from a conviction of voluntary manslaughter. In the days preceding the homicide, defendant's wife left the couple's home and told defendant she had filed for divorce. Just before the killing, defendant's wife told him that he had never satisfied her sexually, that she had found an older man, and that she was going to get a divorce. Defendant then dragged his

wife from their home and beat, kicked and stomped her, causing injuries from which she later died.

Defendant appealed, contending that he was guilty of murder or of nothing. The court disagreed, stating:

"To follow unequivocally the rule that 'mere words['] are insufficient to cause the provocation necessary to support a finding of guilt of voluntary manslaughter would be in keeping with precedent and an established rule; however, it would be a direct refutation of logic and a miscarriage of justice. We reach this conclusion for it is not incumbent on us to determine what could or did provoke the defendant into a state of intense passion, for by his testimony he made such determination." *Ahlberg*, 13 Ill. App. 3d at 1041.

In the first place, the court in *Ahlberg* was simply incorrect in its view that it need not inquire into the nature of the provocation which allegedly caused a state of passion. To the contrary, as we have stated, the law recognizes only certain categories of provocation. Under the appellate court's view in *Ahlberg*, even the slightest provocation would suffice, as long as the defendant testified that the deceased's conduct provoked intense passion. As the appellate court correctly stated in *People v. Neal* (1983), 112 Ill. App. 3d 964, 969: "Passion on the part of the slayer, no matter how violent will not relieve him from liability for murder unless it is engendered by a serious provocation which the law recognizes as being reasonably adequate. If the provocation is inadequate, the crime is murder. *People v. Matthews* (1974), 21 Ill. App. 3d [249], 253."

Moreover, it is obvious from the *Ahlberg* opinion that the court was loath to reverse the voluntary manslaughter conviction. Defendant in that case had been acquitted of murder; therefore, reversal of the voluntary manslaughter conviction likely would mean that defendant would escape any punishment for the crime. (See *People*

*v. Thompson* (1973), 11 Ill. App. 3d 752 (a defendant charged with murder may properly be found guilty of the lesser offense of voluntary manslaughter, but only if the evidence establishes the necessary elements of that offense; voluntary manslaughter conviction reversed); *People v. Delaney* (1978), 63 Ill. App. 3d 47, 50 (Linn, J., dissenting).) The court in *Ahlberg* stated: "Having escaped a guilty of murder conviction [defendant] now asks that we set aside a voluntary manslaughter conviction even though by his own testimony the words of his wife were such as to cause him to lose all control of himself \*\*\*. To grant the request of the defendant would make a mockery of the law." (*Ahlberg*, 13 Ill. App. 3d at 1041.) The court candidly stated that its holding ignored precedent and established rules. The court's ruling in the *Ahlberg* case proves the old adage, "Hard cases make bad law."

*People v. Carr* (1980), 91 Ill. App. 3d 512, was also an appeal from a conviction for voluntary manslaughter. On facts similar to those in *Ahlberg*, the court in *Carr* followed *Ahlberg* and affirmed the conviction.

*People v. Ambro* (1987), 153 Ill. App. 3d 1, unlike *Ahlberg* and *Carr*, was an appeal from a murder conviction in which defendant contended that the trial court erred in refusing to instruct the jury on the offense of voluntary manslaughter. The majority acknowledged the general rules we have set out, but thought that *Ahlberg* and *Carr* created "[a]n apparent exception to these general rules, based on verbal revelations of infidelity and other conduct." (153 Ill. App. 3d at 5.) Since the circumstances in *Ambro* were similar to those in *Ahlberg* and *Carr* (a history of ongoing marital discord, a wife who evidenced an intent to permanently leave her husband, insulting remarks concerning the husband's masculinity, and an announcement of adultery by the wife), the court applied the exception created by *Ahlberg* and held it was

reversible error to refuse defendant's voluntary manslaughter instruction. *Ambro*, 153 Ill. App. 3d at 6-7.

Parenthetically, we fail to understand why a history of marital discord should be a factor favoring a voluntary manslaughter instruction. The appellate court's opinions in *Ahlberg, Carr, Ambro, Chevalier* and *Flores*, without explanation, all list this factor as one favoring a voluntary manslaughter instruction. Since voluntary manslaughter requires evidence of a *sudden* passion, a history of marital discord, particularly suspicions of adultery, if relevant at all, would undermine, not support, a defendant's claim that the evidence supports a voluntary manslaughter instruction.

Justice Lindberg dissented from that portion of the *Ambro* opinion which held that defendant presented sufficient evidence to warrant giving a voluntary manslaughter instruction. He pointed out that "serious provocation" is a legal standard that has been defined by this court to include adultery with the offender's spouse. (*People v. Crews* (1967), 38 Ill. 2d 331, 335.) In his view, " 'words alone [even those that carry messages of adultery] are insufficient evidence of provocation.' " (*Ambro*, 153 Ill. App. 3d at 9, quoting *People v. Arnold* (1974), 17 Ill. App. 3d 1043 (bracketed language in *Ambro*).) He concluded that the evidence in *Ambro* did not meet the legal standard of provocation. Therefore, the evidence did not authorize or mandate the giving of a voluntary manslaughter instruction, and the conviction of murder should have been affirmed.

Justice Lindberg wrote the opinion for the court in *Chevalier*. He referred to his dissent in *Ambro*, but stated that he felt bound by *stare decisis* to follow the majority opinion in *Ambro. Chevalier*, 167 Ill. App. 3d at 797 n.1.

We conclude that the "exception" to the general rule created by the *Ahlberg* line of cases is an incorrect state-

ment of Illinois law. *A fortiori*, the appellate court's reliance on those cases in *Chevalier* and *Flores* is misplaced. Further, we decline defendant Flores' invitation to change the law by holding that a confession of adultery by a spouse is legally adequate provocation.

Given our rejection of the *Ahlberg* line of cases, defendants' positions are unsupportable; defendants appear to concede as much. Whatever may be the outer limits of the general rule that only the discovery of the parties in the act of adultery, or immediately before or after the act, will suffice as provocation, neither case falls within the rule. In People v. Chevalier, during the course of the marriage, the victim left the defendant three times to live with defendant's best friend. The night before the murder, defendant discovered his wife's soiled panties in his car but said nothing to his wife. The next evening, he confronted his wife and said more than once that he knew she was "messing around" again. Similarly, in People v. Flores, defendant testified that he suspected his wife of having an affair for approximately eight months prior to the murder. Thus, neither case can possibly come within the rule. As for the insulting remarks made by the victims, the *Ahlberg* line of cases simply ignores the rule that no matter how insulting, mere words are insufficient provocation.

For these reasons, we hold that in each of the cases before us, the provocation claimed was, as a matter of law, insufficient to constitute the serious provocation necessary to reduce the homicide from murder to voluntary manslaughter. Accordingly, in People v. Flores, the trial court did not err in refusing to give the jury a voluntary manslaughter instruction, and in People v. Chevalier, defendant could not have been prejudiced by an erroneous instruction on the offense. The decisions in *Ahlberg*, *Carr*, and *Ambro* are overruled to the extent they are inconsistent with this opinion.

## GRIFFIN'S TESTIMONY

Defendant Flores contends that the trial court erred in admitting attorney Griffin's testimony that the victim told Griffin that defendant had threatened her. The appellate court agreed.

The State contends that the issue is waived. We agree. Defense counsel objected to the testimony prior to trial and again prior to Griffin's testimony during an in-chambers conference. The record is ambiguous as to whether defense counsel withdrew his objection to the testimony during this conference. But even assuming defendant preserved the objection at trial, he waived it on appeal by failing to include it in his post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176; *People v. Pickett* (1973), 54 Ill. 2d 280.

Even absent waiver, we would find that the admission of the challenged testimony, though error, was harmless. We agree with the appellate court's reasoning in *Flores* that under our decision in *People v. Floyd* (1984), 103 Ill. 2d 541, the testimony was inadmissible hearsay. (See *Flores*, 168 Ill. App. 3d at 641-43.) Because the appellate court's ruling on the issue of the voluntary manslaughter instruction necessitated a new trial, the court did not consider the State's argument that any error in admitting Griffin's testimony was harmless. In view of our disposition, we find that the error was harmless.

Flores admitted killing his wife and he did not contend that the killing was legally justified. His theory was that the evidence supported a verdict of voluntary manslaughter. Had the evidence supported such a verdict, we would agree that the admission of the hearsay evidence was reversible error, since the only purpose of the evidence was to show that Flores had a preexisting intent to harm his wife. (See *Flores*, 168 Ill. App. 3d at 642.)

The hearsay evidence was "prejudicial" to the defendant's case in the sense that most evidence offered by a litigant is prejudicial to the opposing side—that is precisely why it is offered. But we have held as a matter of law that the evidence did not support a voluntary manslaughter conviction. Therefore, the hearsay evidence was no more prejudicial to Flores than was the remainder of the State's case against him. See *People v. Taylor* (1984), 101 Ill. 2d 508, 516-17 (admission of defendant's statements regarding possession of murder weapon held harmless error where other evidence sufficiently established that defendant was in possession of murder weapon at the time of the murder); *People v. Floyd* (1984), 103 Ill. 2d 541, 549 (Underwood, J., dissenting) (in light of other evidence, including defendant's statement that he "did it," admission of hearsay statements that deceased feared defendant would harm her was harmless beyond a reasonable doubt).

That the admission of the hearsay statements was harmless error is further shown by the fact that four other witnesses testified to threats made by defendant. Defendant responds that the testimony of these four witnesses, all of whom were relatives of the victim, may be discounted because the witnesses were severely impeached at trial. According to defendant, given the impeachment of these witnesses, Griffin's testimony must have carried much more weight with the jury. The fact remains, however, that the testimony of the four relatives was before the jury, and we find no need to speculate as to the weight assigned by the jury to the testimony of the various witnesses. Under the circumstances, we find that Griffin's testimony as to defendant's threats was merely cumulative.

For these reasons, we hold that defendant Flores waived any error in the admission of Griffin's testimony. Moreover, even assuming the issue had been properly

preserved, the admission of the testimony, though error, was harmless beyond a reasonable doubt.

For the foregoing reasons, the judgment of the appellate court in each of the consolidated cases is reversed. The judgment of the circuit court in each case is affirmed and the convictions of murder are reinstated.

*Appellate court reversed;*
*circuit courts affirmed.*