THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAFAEL CEDENO, Defendant-Appellant.

Second District    No. 2—92—1388

Opinion filed June 8, 1994.

258

Kathleen T. Zellner, of Kathleen T. Zellner & Associates, of Naperville (Michael Hemstreet, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:
A jury in the circuit court of Du Page County convicted defendant, Rafael Cedeno, of first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1 (now codified, as amended, at 720 ILCS 5/9—1 (West 1992))). The court sentenced him to 45 years' imprisonment. Defendant appeals both the conviction and the sentence. He contends that the trial court erred by (1) refusing to dismiss certain members of the venire for cause; (2) striking the testimony of a State witness and denying defendant the opportunity to cross-examine him; (3) refusing to instruct the jury concerning the offense of second degree murder; and (4) imposing a sentence of 45 years' imprisonment. We affirm.

Testimony at trial indicated that on June 18, 1991, defendant arrived home from work early and began drinking and working in his garage. He extracted tools from a toolbox, moving aside his pistol to get to the tools, and began to construct an antenna for the house. His son, Jeffrey Cedeno, was home at that time.

His wife, Evelyn Velazquez (the victim), came home later, accompanied by her daughters, Maribel Contreras (defendant's stepdaughter) and Michelle Cedeno. The victim was driving defendant's sister's car, because her own car was being serviced. As the women began to prepare dinner for the family, Jeffrey went out to the garage, where defendant was talking on a cordless phone in his pickup truck. Jeffrey heard defendant discuss his marriage, speaking in a loud tone and using profanity. When the call ended, defendant told Jeffrey that, no matter what happened, he still loved him.

Defendant then drove to his sister Anna Santana's home. He spoke with his sister and her husband Pablo regarding the cars and his marriage. They explained why the victim had their car, and he asked why she had not taken the family van. He complained that the victim made such decisions without consulting him and said that his marriage would never work because people continuously interfered. He said he wanted to kill his wife, and then he left for home. Anna phoned the victim as defendant departed.

Upon returning, defendant instructed his children to return a videotape to a rental store. Michelle said that she would do it later, and defendant replied that what he had to do could wait. Defendant returned to the garage and remained there while the family ate; then he went inside to speak with the victim.

Maribel had left, and the victim and the children were in Michelle's room talking. Defendant asked the victim to accompany him

to the garage to talk. She said that she did not wish to speak with him and that they had nothing to discuss, but she did go with him to the garage so that their children would not hear them quarrel. The children followed them into the hallway, and Michelle told her father that if he hurt her mom, she would call the police. He told her she would be sorry if she did that, and she responded that she was not afraid of him.

The garage door closed, and defendant and the victim argued. The children slipped down the stairs, and Michelle opened the garage door slightly. The children listened as their parents argued, and defendant accused the victim of infidelity. They argued for about 20 minutes, and the victim returned to the house. The children retreated to Michelle's room. The victim came into the room and retrieved some clothes; then she locked herself in the bathroom to take a shower.

Defendant took the pistol out of the toolbox and went into the house. He looked in on the children, asked why they were crying, and accused them of taking sides. He proceeded up to his bedroom and found the bathroom door locked. He straightened the end of a coat hanger and used it to jimmy open the door. He entered the bathroom and closed the door behind him. The victim was seated on the commode.

Again the children listened at the door. Michelle tried the door and found it locked. She heard defendant tell the victim that they would go to hell together. They argued further, and the victim told defendant he would never see his children again. Michelle ran downstairs to call the police.

As she dialed, she heard four gunshots. Jeffrey remained outside the bathroom door. He heard a single shot, a hesitation, and three more shots. He retreated to the stairs as his father exited the bathroom, closing the door behind him. Defendant walked past Jeffrey, holding an object close to his side and out of Jeffrey's sight. He proceeded downstairs and out the front door. As he passed, Michelle saw that he was carrying a pistol and a cordless phone. She remained on the phone until the police arrived, calling after Jeffrey as he began to leave the house.

When the police arrived, Michelle escorted them to the bathroom, where the victim lay bleeding on the floor. Paramedics came and took the victim to the hospital, where she was pronounced dead soon after arrival. An autopsy revealed that she had died as a result of multiple gunshot wounds.

Defendant abandoned his truck in West Chicago and called his brother, Angel Cedeno, and asked to be picked up. Angel met him in

West Chicago and drove him to the Chicago home of their sister, Inocencia Cedeno. Defendant remained with Inocencia and her husband, Sixto Alicea, and Angel returned to his home.

Police found an address book in defendant's house and thereby located Angel. An officer phoned Angel and asked for the whereabouts of defendant. Angel agreed to cooperate, and West Chicago police officers drove to Angel's home, accompanied by Du Page County Assistant State's Attorney Phil Dolci. Angel then escorted Dolci and the officers to Inocencia's home. The officers placed defendant under arrest, and he submitted peacefully. He was then transported to the West Chicago police department. He was "Mirandized" on the way to the police station and again at the station. He made oral as well as written statements.

Defendant filed a number of pretrial motions, most notably a motion to suppress statements, which was denied, and a motion to determine eligibility for the death penalty. The State chose not to seek a sentence of death. Attorneys for both sides then participated in *voir dire* with seven peremptory challenges each, in accordance with Supreme Court Rule 434(d) (134 Ill. 2d R. 434(d)). Twenty-nine potential jurors and alternates were excused for cause and by peremptory challenges. When the jury was empaneled, defendant had two peremptory challenges remaining.

During the course of the trial, the State presented the testimony of Angel Cedeno. After answering preliminary questions, the witness made it clear that he had perjured himself before the grand jury and had lied to the police. The court *sua sponte* halted the examination and appointed counsel for the witness. After conferring with the witness, appointed counsel informed the court that the witness would invoke his right of silence under the fifth amendment in answer to any further questioning. The court conferred with all counsel at great length and on defendant's motion struck the testimony of Angel Cedeno. Defendant then moved for a mistrial, and the court denied the motion.

At the end of all the testimony, defendant sought to have the jury instructed on the offense of second degree murder. The court denied this instruction and instructed the jury only as to first degree murder. The jury returned a verdict of guilty, and the court sentenced defendant to 45 years' imprisonment.

■ Defendant first contends that the trial court erred in denying his motions to excuse venire members Eviota and Lucchesi for cause. He claims that these two potential jurors evidenced prejudice against him. A defendant's failure to exhaust his peremptory challenges constitutes a waiver of any claim that a juror should have been stricken

for cause and precludes any complaint that the juror was improperly seated. (*People v. Feagans* (1983), 118 Ill. App. 3d 991, 997; see also *People v. Brooks* (1989), 185 Ill. App. 3d 935, 939; *People v. Townes* (1985), 130 Ill. App. 3d 844, 856.) Thus, because defendant had two peremptory challenges remaining at the time the jury was empaneled, he has waived his claim against the denial of these two motions to excuse for cause.

Next, defendant contends that, by striking the entire testimony of Angel Cedeno, the trial court denied defendant the right to confront a witness against him. During rebuttal at oral argument he alleged error in the denial of his motion for a mistrial, but he did not contest this point in his brief.

The Constitution of the United States guarantees a criminal defendant the right to confront witnesses against him (U.S. Const., amend. VI), and the right to confront includes the right to cross-examine. (*People v. Doll* (1984), 126 Ill. App. 3d 495, 506-07.) An alleged error is harmless, however, where a reviewing court concludes that a trial without the alleged error would have produced no different result. (*People v. Ward* (1992), 154 Ill. 2d 272, 294; *People v. Carlson* (1992), 224 Ill. App. 3d 1034, 1041.) Even constitutional errors may be found harmless where it is clear beyond a reasonable doubt that the jury would not have returned a different verdict. *People v. Howard* (1991), 147 Ill. 2d 103, 147-48, *cert. denied* (1992), 506 U.S. 875, 121 L. Ed. 2d 154, 113 S. Ct. 215.

■ Without reaching the question whether the court erred in striking the testimony of Angel Cedeno, we find beyond a reasonable doubt that the decision to do so resulted in no harm to defendant. The testimony against defendant was overwhelming, and the points defendant might have proven through this witness were provable through other witnesses. Also, the testimony elicited prior to the court's interjection was preliminary and largely innocuous, and the one statement which hinted at a scheme to obstruct justice was presented in confusing and broken English. We therefore find beyond a reasonable doubt that the jury would not have rendered a different verdict had the court forced the witness to testify further.

Next, defendant contends that the trial court erred in refusing his request to submit to the jury the Illinois Pattern Jury Instructions concerning the offense of second degree murder (Illinois Pattern Jury Instructions, Criminal, Nos. 2.01A, 7.03A, 7.04A, 26.01A, 26.05 (3d ed. 1992)). It is established that a criminal defendant may be entitled to have the jury instructed on a less serious offense that is included in the one with which he is charged. (*People v. Bryant* (1986), 113 Ill. 2d 497, 502.) Where there is some evidence in the record which, *if*

believed by the jury, would reduce the crime to the lesser offense, an instruction on the lesser offense should be given. (*People v. Lockwood* (1992), 240 Ill. App. 3d 137, 145.) Such instruction is only required in cases where the jury could rationally find the defendant guilty of the lesser offense and not guilty of the greater offense. *People v. Baney* (1992), 229 Ill. App. 3d 770, 773.

■ A person commits second degree murder when he commits first degree murder under the mitigating circumstance of a sudden and intense passion resulting from serious provocation. (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (now 720 ILCS 5/9—2 (West 1992)).) "The only categories of serious provocation which have been recognized are: 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property.' [Citation.]" (*People v. Chevalier* (1989), 131 Ill. 2d 66, 71.) Defendant asserts that the record contains evidence that he and the victim were embroiled in a quarrel that escalated and that he was acting under a sudden and intense passion.

The trial court found as a matter of law that the evidence did not support second degree murder instructions, and we agree. "If the provocation is inadequate, the crime is murder." (*Chevalier*, 131 Ill. 2d at 73.) Defense counsel admitted at trial that there was no evidence that the victim had been caught in the act of adultery, that she had committed a sudden assault upon defendant, or that the two were engaged in mutual quarrel or combat. He argued that the victim's statement and her intent to take away defendant's children constituted more than mere words and amounted to conduct, provoking defendant to kill. No authority supports the transformation of these words into conduct. We therefore reject this contention.

■ On appeal defendant further contends, contrary to trial, that there was evidence of mutual combat: some mention of shoving, talk of infidelity, and evidence of a heated quarrel. He asserts that this constituted sudden provocation sufficient to merit an instruction. There was no evidence, however, of suddenness. "[V]oluntary manslaughter [now second degree murder] requires evidence of a *sudden* passion ***." (Emphasis in original.) (*Chevalier*, 131 Ill. 2d at 75.) The argument in this case was prolonged. Furthermore, the victim repeatedly stated that she did not wish to argue and had nothing to say to defendant. She even removed herself from the argument in the garage, locking herself in the bathroom.

Breaking into the bathroom and shooting the victim at virtually point-blank range as she sat on the toilet, defendant reacted wholly out of proportion to the situation. An attack out of proportion to the

claimed provocation is murder, and no instruction on the lesser offense is warranted. *People v. Nunn* (1989), 184 Ill. App. 3d 253, 275.

Furthermore, defendant's reliance on *Chevalier* misstates the law. In *Chevalier*, the supreme court explained that adultery can only suffice as provocation for a killing where the defendant catches the adulterous spouse and partner *in flagrante delicto*. (*Chevalier*, 131 Ill. 2d at 72.) Mere words are not enough, and in *Chevalier* the voluntary manslaughter instruction was properly denied, because the claimed provocation consisted of mere words. (*Chevalier*, 131 Ill. 2d at 71.) There, the victim admitted adultery and disparaged the defendant's sexual prowess. (*Chevalier*, 131 Ill. 2d at 70.) In *People v. Flores* (1989), 131 Ill. 2d 66, consolidated with *Chevalier* in the supreme court, the victim bragged of adultery in the marital bed. (*Chevalier*, 131 Ill. 2d at 70.) Neither situation warranted the manslaughter instruction, because both involved mere words. *Chevalier*, 131 Ill. 2d at 70-71.

■ In the present case, defendant urges that the argument centered on infidelity and therefore provided adequate provocation. Like *Chevalier*, however, the alleged provocation here comprised mere words. Moreover, these mere words were defendant's own words. He accused, and she denied. The situation is reminiscent of *People v. Arnold* (1974), 17 Ill. App. 3d 1043, where the court held the defendant's long-standing belief in the victim's infidelity did not constitute provocation sufficient to warrant a manslaughter instruction. (*Arnold*, 17 Ill. App. 3d at 1047.) Defendant apparently asserts that accusing one's spouse of adultery should provide provocation supportive of a second degree murder instruction. This theory is unacceptable and completely baseless at law. Therefore, as in *Chevalier*, the mere words of infidelity here provide no evidence of provocation.

Defendant additionally heralds the statement in *People v. Robinson* (1989), 189 Ill. App. 3d 323, that a manslaughter instruction is required even if the mutual combat evidenced is only a momentary scuffle. (*Robinson*, 189 Ill. App. 3d at 350.) In *Robinson*, the conviction was reversed *inter alia* because no manslaughter instruction was given. (*Robinson*, 189 Ill. App. 3d at 351-52.) There, however, the evidence indicated a knife fight, in that furniture was overturned and two knives were recovered from the scene. *Robinson*, 189 Ill. App. 3d at 350.

■ Defendant asserts that here there was evidence of shoving and that the jury could have found, based on the restricted confines of the bathroom, that he and the victim struggled for the gun. There was, however, no testimony of such a struggle, nor any physical evidence of fisticuffs. The shoving mentioned in a psychologist's report of

defendant's self-serving statements does not evidence a struggle, and at any rate it was remote from the shooting in time and place.

"To warrant a 'provocation' instruction based upon mutual combat, the struggle must be *mutual*." (Emphasis in original.) (*People v. Lewis* (1992), 229 Ill. App. 3d 874, 881.) Defendant's reliance on *Lewis* is curious, for, like so many cases he relies on, *Lewis* provides better support for the State's position than for defendant's position. In *Lewis*, the instruction was properly denied, because the combat had not been mutual. *Lewis*, 229 Ill. App. 3d at 881.

Defendant asserts that he should not have been denied the instruction merely because he was the aggressor or because he may have formulated the intent to kill at an earlier time. In *Lewis*, the court held these to be improper reasons for denying the provocation instruction. (*Lewis*, 229 Ill. App. 3d at 880-81.) The court found, however, that the trial court had denied the instruction not for either of these faulty reasons, but for the reason that there was no evidence of adequate provocation. (*Lewis*, 229 Ill. App. 3d at 881.) The same is true in the present case. The trial court properly refused to instruct the jury on second degree murder, where there was no evidence of adequate provocation.

Finally, defendant contends that 45 years' imprisonment is an excessive sentence for the first degree murder of his wife, given his age, remorse, work record, potential for rehabilitation, and lack of criminal history. The trial court has broad discretion in sentencing. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19.) Its decisions in this regard, when based on proper factors and within the permissible sentencing range, are entitled to great deference on appeal. (*Streit*, 142 Ill. 2d at 18-19.) The sentencing range for first degree murder is 20 to 60 years. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(a) (now 730 ILCS 5/5—8—1(a)(1)(a) (West 1992)).

■ The trial court considered the sentence in this case at length. It had the benefit of the presentence investigation report, the sentencing hearing, and defendant's statement. The court found that although the crime was not cold-blooded, it was devoid of mercy and compassion. The court found that defendant had acted knowingly, intentionally, and willfully, and without any overwhelming passion. It found defendant hot-headed and prone to anger and concluded that defendant was capable of committing another crime.

The court considered all the factors in mitigation and decided that an extended sentence was not warranted. The court sentenced defendant to 45 years' imprisonment for the protection of the community and for the deterrence of others who might commit similar crimes. The record demonstrates no abuse of discretion, and we

will not substitute our judgment for that of the sentencing court. We therefore affirm the sentence of 45 years' imprisonment.

In sum, defendant has waived appeal as to the venire. He was not harmed by the court's decision to strike the testimony of Angel Cedeno. The trial court did not err in refusing the second degree murder instructions, and the sentence of 45 years' imprisonment does not constitute an abuse of discretion. For these reasons, we affirm the conviction and sentence imposed by the circuit court of Du Page County.

Affirmed.

BOWMAN and DOYLE, JJ., concur.