In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 04-3110

DENNIS THOMPSON, JR.,

*Petitioner-Appellant,*

*v.*

DEIRDRE BATTAGLIA,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2601—**Wayne R. Andersen**, *Judge.*

---

ARGUED NOVEMBER 9, 2005—DECIDED AUGUST 14, 2006

---

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In a fit of rage provoked by his father's beating of his stepmother a day earlier, nineteen-year-old Dennis Thompson, Jr., shot and killed his father and his father's girlfriend, Don Renee Rouse. Thompson was convicted of first-degree murder for the two killings and, although he faced the death penalty, was sentenced to life in prison. After the Illinois courts affirmed his conviction and rejected his post-conviction appeal, he turned to the federal district court, which denied his petition for a writ of habeas corpus. We now affirm that denial.

**I**

Dennis Thompson, Sr. ("Thompson Sr."), the father and one of the victims of the petitioner in this case, was by all accounts a violent and contemptible man. Thompson's mother, Darlene Henderson, divorced Thompson Sr. when her son was just an infant because he was physically abusive toward her and the children. Among other things, Thompson Sr. punched his wife and broke her jaw in a courtroom during a child custody proceeding. The record also contains allegations that Thompson Sr. sexually abused Thompson and his sister.

On March 25, 2004, Thompson Sr. (who apparently remarried at some point, although the record is not clear) severely beat his wife, Thompson's stepmother. The following day, Thompson borrowed his cousin's car and went to his father's house with a loaded gun. There, he found his father drinking and taking drugs with a woman he did not know, Rouse. Thompson followed his father into the kitchen of the house, where an argument ensued. As Thompson Sr. bent over to look into the refrigerator, Thompson fatally shot him in the head at close range. Rouse, hysterical, entered the kitchen, at which point Thompson shot her as well. He then fled the scene. Rouse, badly injured, managed to call police. She later died of her wounds.

The police quickly apprehended Thompson, who confessed to the killings and informed authorities where he had disposed of the gun. He was charged with two counts of first-degree murder. Following a bench trial (at which he did not testify), Thompson was convicted of both counts and sentenced to life imprisonment. In a series of unpublished dispositions, an Illinois appellate court affirmed the convictions and the Illinois Supreme Court denied his petition for leave to appeal. Thompson then filed a post-conviction appeal in state court, which was similarly unsuccessful. Finally, Thompson filed this petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition.

## II

We granted a certificate of appealability (CA) on two issues: "whether [Thompson's] counsel rendered ineffective assistance in violation of the Sixth Amendment due to a failure to seek a mental health examination and present evidence as to Thompson's state of mind at the time of the crime" and "whether [Thompson] was denied his Sixth Amendment right to testify in [*sic*] his own behalf." Thompson has nevertheless briefed two additional issues: whether his counsel was ineffective for failing adequately to consult with him prior to trial and for failing to move to suppress his confession. The state argues that we cannot reach these theories of ineffectiveness at all, because they were not mentioned in the CA that we granted. Setting aside the fact that it is possible for this court to expand a CA, see *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001), there is a more fundamental reason why the state's approach is wrong. We have held that "ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005). That said, however, it is also the case that under the Rules Governing Section 2254 Cases in the United States District Courts, a petitioner is obliged to specify all the grounds for relief available to him and the facts supporting each ground. See Rule 2(c)(1), (2). We need not concern ourselves too much with Thompson's procedural problems here, however, as we conclude that he cannot prevail on either of these claims.

We must address one further point before turning to the merits. Our review of this case is hampered by the fact that

the trial transcript was never made part of the record. A respondent to a habeas corpus petition brought under 28 U.S.C. § 2254 "must attach to the answer parts of the transcript that the respondent considers relevant." Rules Governing Section 2254 Cases, Rule 5(c). The district court may then order the respondent to furnish additional parts of the transcript "upon the request of the petitioner or upon the court's own motion." Rules Governing Section 2254 Cases, Rule 5, Advisory Committee Notes. Here, the state did not attach any part of the transcript to its answer, explaining instead that it "believes that the issues raised can be disposed of based upon the filed pleadings." Thompson's counsel and the district court apparently agreed, since neither asked the state to take any further action. (Prior to the appointment of counsel, Thompson did file a *pro se* letter with the district court clerk inquiring whether he was required to file the trial transcript. Counsel did not follow up on this letter with the court itself, however, nor did he move to supplement the record on appeal.)

We find this course of proceedings slipshod, at best. The vastly preferable course would have been for the complete trial transcript to have been included in the record, since a review of the transcript is helpful (and often essential) to evaluate whether trial counsel's performance was deficient and whether the defendant was prejudiced. That said, this is the unusual case in which we can resolve these issues without the transcript. We do so by taking the facts presented by Thompson in the light most favorable to him. Even on that generous approach, his ineffectiveness claims still fail as a matter of law.

**A**

Our review of Thompson's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which permits a federal court to issue a writ of habeas corpus only if the state court reached a decision on the merits of a claim, and that decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Of course, to demonstrate ineffective assistance of counsel, Thompson must show that his counsel's performance was deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

Defense counsel's trial strategy was to concede that Thompson had committed the killings and then to seek to reduce the charges from first- to second-degree murder by convincing the court that Thompson had acted under a sudden and intense passion. Counsel offered little in the way of evidence, however, to support this theory. Particularly damaging, Thompson argues, was his lawyer's failure to commission a mental examination, which Thompson contends would have supported his theory of the case. Specifically, Thompson reports that during the argument that preceded the shootings, Thompson Sr. "began going off, yelling, cursing, bragging about how he was going to have sex with this woman and how he didn't need anybody." Thompson says that these statements "really pissed [him] off" and caused him to "los[e] all sense of control." As further evidence of his mental state, Thompson claims that after the killings he attempted to take his own life, an effort that was foiled only by the fact that his gun was empty. Finally, Thompson states that when told of the death of his father and Rouse by police he became hysterical and remained in a "semi state of shock" even after being taken into custody.

Illinois law defines second-degree murder as a killing committed under "a sudden and intense passion resulting from serious provocation by the individual killed." 720 ILCS 5/9-2. Although the criminal code does not define the term "serious provocation," the Illinois Supreme Court has recognized only four situations where this will exist: "substantial physical injury or substantial physical assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse." *People v. Garcia*, 651 N.E.2d 100, 110 (Ill. 1995); see also *People v. Blackwell*, 665 N.E.2d 782, 791 (Ill. 1996); *People v. Chevalier*, 544 N.E.2d 942, 944 (Ill. 1989). Mere words or gestures are not enough: "passion on behalf of the defendant, no matter how violent, will not relieve the defendant of culpability for first degree murder unless it is engendered by provocation which the law recognizes as reasonable." *Garcia*, 651 N.E.2d at 110.

On direct appeal, the Illinois appellate court rejected Thompson's argument that the trial court should have convicted him of second-degree murder, explaining that Thompson had failed to show legally sufficient provocation. The court explained that "[w]hile we do not deny that defendant may have been very angry with his father and Ms. Rouse when he shot them, he could not have been acting under a 'sudden and intense passion' as defined by statutory and case law." On post-conviction review, the court added that, given that Thompson could not demonstrate provocation as a matter of law, "trial counsel's failure to order a psychological evaluation was not ineffective assistance because it was not likely to affect [Thompson's] trial or his sentence."

Thompson contends that Illinois courts do not strictly limit themselves to the four traditional categories of serious provocation set forth in *Garcia*, citing several appellate court decisions that he claims stretch those boundaries and arguing that his case could fit into either the expanded adultery or physical injury box. Leaving aside the merits of

this argument, it is unavailing for the simple reason that it has already been considered and rejected by the Illinois Supreme Court. Thompson does not argue that that court's interpretation of the second-degree murder statute violates any federal law; we therefore lack authority under 28 U.S.C. § 2254 to grant his petition on this basis. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Thus, even if a mental examination would have shown that Thompson was angry and distraught at the time of the killings, such a showing would have been insufficient to reduce the charges against Thompson to second-degree murder. An attorney is not ineffective for failing to pursue a doomed line of inquiry, such as evidence that is legally insufficient to support an argument. See *Stone v. Farley,* 86 F.3d 712, 717 (7th Cir. 1996); see also *King v. Kemna*, 266 F.3d 816, 824-25 (8th Cir. 2001) (*en banc*). On these facts, there was simply nothing Thompson's counsel could have done to prove adequate provocation to merit a second-degree murder charge. His decision not to order a mental health exam therefore did not constitute deficient performance. A potentially more serious question is whether counsel was ineffective for pursuing the second-degree murder theory in the first place—a strategy that required him to concede that Thompson committed the killings. Thompson, however, has never raised this theory and thus has forfeited it by now. Moreover, even if he had pursued it, the fact that the evidence, which included Thompson's properly admitted confession, was overwhelming shows that he could not prove prejudice.

**B**

Thompson next argues that his trial counsel denied him the right to testify in his own defense, stating in an affidavit that "I [ ] told my attorney I wanted to testify when I saw how twisted things were coming out [at the trial]." The Illinois appellate court rejected this claim, stating: "Defendant's waiver of the right to testify is presumed because he failed to testify or to notify the court of his desire to do so." The district court agreed, citing *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), for the proposition that "a defendant's silence at trial effectively waives his right to testify on his own behalf." Thompson contends that the equation of silence with waiver constitutes an error of law.

A criminal defendant's right to testify is "a fundamental constitutional right." *Rock v. Arkansas*, 483 U.S. 44, 53 n.10 (1987). Whether silence alone should be presumed to be a waiver is a more difficult question. As we explained in *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), some circuits require a defendant to protest a lawyer's refusal to allow her to testify during trial to preserve the right. *Edwards*, 897 F.2d at 446-47; *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir. 1991) (*per curiam*). Illinois follows that rule. *People v. Smith*, 680 N.E.2d 291, 302-03 (Ill.1997). At the other extreme, several state courts require judges to inquire of defendants directly whether they want to testify. See, *e.g.*, *People v. Curtis*, 681 P.2d 504, 514-15 (Colo. 1984); *State v. Neuman*, 371 S.E.2d 77, 81-82 (W.Va. 1988). The rule in this circuit "steer[s] a middle course," requiring a defendant who wishes to raise this claim to meet a heightened pleading standard before the court must hold an evidentiary hearing on the question of waiver. *Underwood*, 939 F.3d at 476. In other words, a "barebones assertion by a defendant, albeit made under oath, is insufficient"; something more, such as an affidavit from the lawyer who allegedly forbade his client to testify, is required. *Id.* And although we do not require judges to

question defendants regarding their desire to testify, we have suggested that prudent counsel may choose to put such waivers on the record outside the presence of the jury, as is standard practice in some courts. See *Taylor v. United States*, 287 F.3d 658, 662 (7th Cir. 2002).

The variety in practice among the state courts and the various federal courts shows, unfortunately for Thompson, that there is no standard clearly established by the Supreme Court of the United States that is binding on all. Even if this were not the case, the denial of Thompson's right to testify was harmless, since Thompson's only argument is that if allowed to testify he would have explained his mental state at the time of the shootings. Either way one approaches the question, Thompson cannot prevail.

## C

Finally, Thompson raises two additional arguments not described in the certificate of appealability in support of his claim that counsel was ineffective. First, he argues that his counsel was ineffective for meeting with him only once prior to trial, citing our decision in *White v. Godinez*, 301 F.3d 796 (7th Cir. 2002). In that case, we held that defense counsel's exceedingly brief consultation was both deficient and prejudicial because it resulted in the failure to call an available alibi witness. *Id.* at 803-04. Although the performance of Thompson's counsel may have left something to be desired, Thompson claims only that the inadequate consultation caused him "to miss valuable evidence concerning Thompson's mental state at the time of the shootings." We have already concluded, however, that this evidence was of no legal consequence. Thus, even if counsel's performance was subpar in this particular, Thompson was not prejudiced by it.

Thompson also contends that his counsel was ineffective for failing to move to suppress his confession as

involuntary. Since "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, when a habeas corpus petitioner such as Thompson claims that his lawyer's failure to make a motion to suppress was ineffective, he must "prove the motion [would have been] meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). The thrust of Thompson's suppression argument is that his confession was involuntary because it was the product of the same mental distress that led to the shootings. This argument fails as a matter of law because "a defendant's mental condition, by itself and apart from its relation to official coercion," cannot lead to a finding that a confession is involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Although Thompson argues weakly that the officers coerced him to confess through such tactics as restricting his access to the bathroom and prohibiting him from contacting his grandmother during questioning, neither of these allegations are sufficient to prove that his will was overborne by the police. This theory, too, is inadequate to show that Thompson's Sixth Amendment right to the effective assistance of counsel was denied.

## III

The district court's judgment denying Thompson's petition for a writ of habeas corpus is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*